UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| KEITH FREY, | * | |
| --- | --- | --- |
| | * | NO. _____ |
| Plaintiff, | * | |
| | * | JURY DEMAND |
| v. | * | |
| | * | |
| IMPACT RTO TENNESSEE, LLC | * | |
| d/b/a RENT-A-CENTER; IMPACT | * | |
| RTO MANAGEMENT LLC; IMPACT | * | |
| MANAGEMENT, INC.; IMPACT | * | |
| PROPERTIES, INC.; IMPACT RTO | * | |
| HOLDINGS, LLC. | * | |
| | * | |
| Defendants. | * | |

## **COMPLAINT**

Comes the Plaintiff, by and through his attorneys, and pursuant to Rule 3 of the Fed. R. Civ. P., for his Complaint against the Defendants would show unto the Court as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331 which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

3. Plaintiff brings this action to redress age and disability discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq. ("ADEA"), the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, et seq. ("THRA"), the Tennessee Disability Act ("TDA"),

§8-50-103, et seq., and all other federal and state laws prohibiting age and disability discrimination.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since Defendants conduct business in this district and the events giving rise to the claims occurred in this district.

## II. Nature of Proceeding

5. This is an employment case in which Plaintiff seeks back pay and benefits; injunctive relief requiring Defendants to cease its discriminatory practices and to rehire Plaintiff into the position from which he was unlawfully discharged; liquidated damages; compensatory damages; prejudgment interest and attorney fees; punitive damages; and for such additional damages as may be necessary to effectuate the purposes of the laws invoked herein.

## III. The Parties

6. Plaintiff is currently a resident of Knoxville, Knox County, Tennessee and his date of birth is September 22, 1957.

7. Defendant Impact RTO Tennessee, LLC is a Tennessee limited liability company with its principal address in Tampa, Florida.[1]

8. Defendant Impact RTO Management, LLC is a Florida limited liability company with its principal address in Tampa, Florida.[2]

9. Defendant Impact Management, Inc. is a Florida corporation with its principal address in Tampa, Florida.

10. Defendant Impact Properties, Inc. is a Florida corporation with its principal address in Tampa, Florida.

---

[1] There is no publicly available information disclosing who the member of this Defendant is. As such, that information cannot be updated until initial discovery is completed.
[2] There is no publicly available information disclosing who the member of this Defendant is. As such, that information cannot be updated until initial discovery is completed.

11. Defendant Impact RTO Holdings, LLC is a Florida limited liability company with its principal address in Tampa, Florida.[3]

12. Upon information and belief, Defendants are a joint and/or integrated "employer" within the definition of the ADEA, the THRA, and all laws invoked herein.

13. Defendants, together and separately, meet the definition of an "employer" inasmuch as Defendants each employ the requisite number of people to qualify for coverage of all laws asserted herein.

## IV. BACKGROUND AND FACTS

14. Plaintiff worked for Defendants (or their predecessors) for over 11 years prior to his termination on August 5, 2022.

15. Plaintiff was a highly successful employee for many years in the role of Assistant Credit Manager ("ACM").

16. For example, Plaintiff was a recipient of the "Top Gun" award, which was given to the highest performing employees nationwide.

17. Defendants acquired the stores in which Plaintiff worked in November of 2018. At that time, Plaintiff was working for them in Florida and the store in which he was working was leased to another company.

18. At that time, Lisa Lohman, who was an executive, recruited Plaintiff to continue working for her through Defendants. After discussion with Ms. Lohman, it was agreed that Plaintiff would move and work at Defendants' store in Athens, Tennessee. This was close to him family and was a store that was in need of improvement in terms of credit and collections.

---

[3] There is no publicly available information disclosing who the member of this Defendant is. As such, that information cannot be updated until initial discovery is completed.

19. When Plaintiff started working at the store in Athens, Tennessee, the Store Manager was Ray Gilmore.

20. Mr. Gilmore was significantly younger than Plaintiff.

21. Plaintiff and Mr. Gilmore enjoyed a positive working rapport for many years.

22. Mr. Gilmore reported to a Regional Manager, Janet Thompson.

23. Ms. Thompson was also significantly younger than Plaintiff.

24. In 2020, Plaintiff fell and injured himself.

25. In 2021, Plaintiff was diagnosed with having several Transient Ischemic Attacks (TIAs). As a result, he began to experience issues with balance and had to start using a cane at work.

26. Plaintiff's TIA's and the impact therefrom substantially interfered with his major life activities. To wit, Plaintiff's physical impairment significantly interfered with or substantially limited his major life activities, to varying degrees at varied times, including his ability to engage in excessive walking, lifting, stair climbing, performing manual tasks, his ability to grip, and also significantly impaired his neurological system in terms of balance.

27. As such, Plaintiff was an individual with a disability as defined in the TDA (and under federal law).

28. In the alternative, due to his medical condition, his balance issues (which caused him to fall on occasion at work), and his use of a cane, and these conditions combined with his age, Plaintiff was an individual who was regarded by Defendants as having a disability.

29. Plaintiff remained able to perform the essential functions of his position, with or without accommodation.

30. As Plaintiff was diagnosed with and treated for his TIA's, he disclosed his diagnosis, testing he undertook as a result, and limitations to Defendants.

31. One tangential duty that Plaintiff performed as ACM was assisting on the delivery truck if Defendants were short on employees or if one of the delivery crew was sick.

32. After his TIA's, Plaintiff struggled with lifting and carrying heavy appliances up steps.

33. One day Plaintiff struggled with those tangential tasks and it was observed by Ms. Thompson.

34. She had a very negative reaction as a result and told Plaintiff he could not work as an ACM if he could not lift, even though that task is not essential to the job of ACM.

35. Shortly after that, Mr. Gilmore told Plaintiff that Ms. Thompson told him that Plaintiff had to lift, and, if he could not, Plaintiff should not be working at Impact.

36. At that point, Plaintiff told Mr. Gilmore that he was struggling with lifting at times due to his disability and that he needed assistance at times with it.

37. After that, Mr. Gilmore began assisting Plaintiff with lifting when we had to fill in and deliver furniture and when he needed help.

38. Following that, however, Ms. Thompson treated Plaintiff very negatively. She was not pleasant to him when she was at the store, she micromanaged his performance, if issues arose in the store she would always blame Plaintiff, and at times she would fault him for false accusations. She did this very publicly towards Plaintiff and it was embarrassing.

39. This was despite the fact that during a recent store visit by the President and District Manager, both praised the store's conditions, financials, and practices.

40. For example, one day she came into the store and criticized Plaintiff, claiming that there was a "hole" where a living room set had been removed and delivered in the afternoon. Other employee acknowledged that she had criticized him unfairly. She said in front of others, "I heard you were so good, but I just do not see it."

41. Ms. Thompson looked down upon Plaintiff due to his use of a cane and his physical struggles, combined with his age.

42. At that time, Plaintiff was meeting and exceeding company requirements/quotas in terms of credit collections.

43. In July of 2022, Plaintiff received his first-ever write up from Defendants, per Ms. Thompson's instruction. He was written up allegedly for having 4 customer complaints over the course of 2-3 years. When Plaintiff asked for details and why this was going back so far (with no prior discipline), Mr. Gilmore told Plaintiff he was only aware of 1 recent complaint. It was not investigated at all to determine whether the complaint was legitimate and Plaintiff was never asked for his "side of the story."

44. Less than one month later, Plaintiff was terminated at the behest of Ms. Thompson. The listed reason was because Plaintiff was allegedly not conducting sufficient credit calls or runs.

45. Plaintiff, and others, were shocked by his termination. Plaintiff talked with Ms. Lohman at the time, who confirmed that his numbers in terms of collected accounts were at standards or better for the 4 months preceding his termination.

46. Upon information and belief, other younger ACMs were not meeting standards and were not disciplined or terminated.

47. In Plaintiff's termination papers, they indicated that Plaintiff had only been average 30-40 call activities and 20-30 in the afternoon.

48. However, Plaintiff had not previously been given a requirement that he complete so many calls or runs per day or week. Rather, the Company had always previously looked at overall collections numbers.

49. Plaintiff was targeted and terminated because of his age and/or his disability (or perceived disability) and need for an accommodation.

50. At the time of his termination, Plaintiff was 65 years old.

51. Plaintiff was terminated for pretextual reasons.

52. Plaintiff has suffered damages as a result.

53. Defendants are responsible for the acts of its supervisory agents.

54. In taking the actions herein, Defendants acted willfully, recklessly, and/or maliciously.

## V. Count 1 – Termination in Violation of ADEA/THRA

55. As described herein, Defendants engaged in disparate treatment of Plaintiff because of his age. This disparate treatment due to age violated the ADEA and the THRA.

56. Defendants disciplined and discharged Plaintiff because of his age. Therefore, Plaintiff's discipline and/or termination violated the ADEA and the THRA

57. Defendants were aware of the unlawfulness of their acts, or at the very least demonstrated a reckless disregard for Plaintiff's federally protected rights, at the time they decided to discharge Plaintiff and treat him in the manner described herein.

## VI. Count 2 - TDA Discrimination

58. At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of the TDA and federal law.

59. Plaintiff's TIA's and the impact therefrom substantially interfered with his major life activities. To wit, Plaintiff's physical impairment significantly interfered with or substantially limited his major life activities, to varying degrees at varied times, including his ability to engage

in excessive walking, lifting, stair climbing, performing manual tasks, his ability to grip, and also significantly impaired his neurological system in terms of balance.

60. Plaintiff was qualified to perform the essential functions of his position with Defendants, with or without accommodation.

61. Plaintiff requested an accommodation due to this impairment.

62. Mr. Gilmore then assisted Plaintiff as needed. However, Ms. Thompson was resentful about Plaintiff's condition and accommodation.

63. As such, Defendants violated the TDA and federal law.

64. Plaintiff was also subjected to an adverse employment action—discipline and termination.

65. In the alternative, when Defendants fired Plaintiff, Defendant perceived Plaintiff to have a disability and/or Plaintiff had a record of a disability.

66. Plaintiff's disability and request for accommodation necessitated by his disability (or Defendant's perception that Plaintiff had a disability and/or Plaintiff's record of a disability) was a "but for" cause of his discharge (related also to his age).

67. By terminating Plaintiff's employment and engaging in the actions alleged herein, Defendant violated the TDA and federal law.

### VII. ADMINISTRATIVE EXHAUSTION

68. On January 3, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), which was assigned Charge Number 494-2023-00923. He has not yet received a Right to Sue, although under the ADEA he does not need one as a precursor for filing suit so long as his charge has been pending for 60 days. Once Plaintiff receives a Right to Sue, he will amend and formally assert his claims under the ADA.

## VIII. Damages

69. As a result of the wrongful actions of Defendants as described above, Plaintiff has suffered both financially and emotionally. In particular, Plaintiff has lost and will continue to lose salary and valuable employee benefits. In addition to the financial loss Plaintiff has sustained, he has suffered emotional damages, humiliation, and embarrassment resulting from Defendants' unlawful actions.

## IX. Prayer for Relief

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendants and require Defendants to answer within the time prescribed by law;

b. That Plaintiff be awarded judgment for damages for lost wages and employee benefits which he has lost from the date of Defendants' discriminatory actions;

c. That the Court issue an injunction requiring Defendants to reinstate Plaintiff, or in the alternative, to award front pay in lieu thereof;

d. That Plaintiff be awarded compensatory damages, including damages for emotional pain, suffering, grief and other nonpecuniary losses, as are allowed under the THRA/TDA and other applicable laws;

e. That Plaintiff be awarded liquidated damages as are allowed under the ADEA and relevant federal law;

f. That Plaintiff be awarded punitive damages;

g. That Plaintiff be awarded attorney fees, prejudgment interest, costs of this action, litigation expenses, and such other relief as the Court deems proper pursuant to the fully effectuate the terms of the laws asserted herein; and

h. Plaintiff demands a jury to try all claims and issues triable by a jury.

> MIKEL & HAMILL PLLC
>
> By: s/ *Donna J. Mikel*
> Donna J. Mikel, #020777
> Attorney for Plaintiff
> 620 Lindsay Street, Suite 200
> Chattanooga, TN 37403
> (423) 541-5400
> dmikel@mhemploymentlaw.com